UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14298-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

TRAVIS YATES,                          :

    Petitioner,                    :

v.                                     :          REPORT OF
                                                  MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                   :

    Respondent.                    :
_____

    Travis Yates, a state prisoner confined at Marion Correctional Institution at Lowell, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions and sentences entered in St. Lucie County Circuit Court Case Nos. 98-00699, 98-03863, 00-03047, 00-03603, 01-00139 and 01-00140.

    This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the amended petition, the Court has the petitioner's response to an order regarding the limitations period, the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply with attached exhibits.

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

Yates essentially raises the following grounds for relief in his amended petition:[2]

1.    The trial court erred in denying his motion to withdraw plea.

2.    He received ineffective assistance of trial counsel in connection with the entry of his no contest pleas and pleas of admissions, because his lawyer (a) induced him to accept a plea offer with a cap of twenty-five years' incarceration by presenting him with an incorrect scoresheet that did not accurately reflect the terms of the plea offer; (b) failed to determine that he was mentally capable of entering the pleas due to the psychotropic prescription medication he was taking at the time he entered the pleas and was sentenced; (c) coerced him into accepting the plea agreement by presenting it as a "now or never" proposition; (d) did not require the trial court to determine during the plea proceeding whether he was under the influence of drugs or alcohol and whether such substances interfered with his ability to knowingly and voluntarily enter the pleas; (e) failed to take pretrial depositions; (f) misled him regarding the sentence to receive pursuant to the plea agreement; and (g) failed to compare the sentencing scoresheet presented to him at the time he entered into the written plea agreement with the amended scoresheet presented at the sentence proceeding, resulting in a discrepancy between the charges as perceived by him and the actual charges.

3.    His convictions and sentences are the result of prosecutorial misconduct in that the state unlawfully altered the terms of the plea agreement after it had been negotiated.

The pertinent procedural history of this case is as follows. The day before trial proceedings were scheduled to commence on several newly charged offenses, Yates entered into a negotiated written plea agreement with the state whereby he agreed to enter pleas of no contest in his best interest to the newly charged

---

[2]In his amended petition, Yates repeats the claim that the trial court improperly failed to grant his motion to withdraw pleas with each ground of ineffective assistance of trial counsel raised. See Amended Petition. (DE# 5). In order for this Court to address Yates' claims without confusion, his claims have been grouped together, renumbered and at times restated.

crimes and enter admissions of guilt to several probation violation charges filed in earlier convictions in exchange for a recommendation by the state of a sentence of imprisonment capped at twenty-five years.[3] (Plea of No Contest/Admission at 1-2, 8)(DE# 14; Ex. 1). Yates indicated in the written plea agreement that he had never been found insane or incompetent and that he was not then under the influence of drugs or alcohol. Id. at 2. The written agreement expressly advised Yates of all the constitutional rights he was waiving by entering into the plea agreement and, by executing the agreement, he indicated that he agreed to waive those rights. Id. at 7-8. Defense counsel Mary Celidonio also executed the written agreement and she stated that she had fully explained the contents of the plea agreement to Yates, she had fully explained the allegations contained in the charging documents, she had explained all the maximum possible penalties, and that she had considered him competent to understand the charges against him and the effect of the plea agreement. Id. at 9.

The same day that he executed the written plea agreement, Yates appeared before the trial court for change of plea proceedings. See Transcript of change of plea and sentencing

---

[3]Specifically, in Case No. 98-699, Yates was charged with five counts of fraudulent use of a credit card and one count of organized fraud. On August 10, 1998, Yates entered pleas of no contest to the offenses and he was sentenced to concurrent terms of imprisonment of six months in the county jail to be followed by a three-year term of probation. He was subsequently charged in Case No. 98-3863 with burglary of a structure and misdemeanor criminal mischief. The new offenses resulted in violation of probation charges in Case No. 98-699. On February 1, 1999, Yates entered pleas of no contest to the then-new offenses and admissions to the violation of probation charges and he was sentenced to a total term of imprisonment of eighteen months to be followed by a two-year term of probation. Yates next committed the subject new offenses of burglary of a structure and petit theft (Case No. 00-3047); grand theft and dealing in stolen property (Case No. 00-3603); aggravated assault upon a law enforcement officer, aggravated fleeing and attempting to elude a law enforcement officer, leaving the scene of an accident with personal injury, reckless driving, possession of cocaine, possession of drug paraphernalia, and resisting an arrest with violence; and dealing in stolen property (Case No. 01-140).

hearings conducted on March 22 and April 10, 2001. (DE# 14; Ex. 21).  Before the formal plea proceeding commenced, the state set out the terms of the negotiated plea offer with regard to the sentences to be imposed, as specified in the written plea form. Id. at 2. The court then asked Yates if he understood the terms of the agreement and that was what he wanted to do, and he answered affirmatively to both questions. Id. at 2-3. Yates was then sworn, and the trial court proceeded to conduct a formal plea colloquy. Id. at 3-31. The court first asked Yates if he had read and executed the written plea form and if he had fully understood and agreed with everything stated in the form. Id. at 3-4. Yates answered affirmatively to the court's inquiries. Id. The court next reviewed with Yates his various constitutional rights that he would be waiving by entering the no contest pleas and admissions, which included the right to be presumed innocent and proceed to trial before a jury with all the rights associated with a trial, and Yates stated that he understood. Id. at 4-5.

The trial court next advised Yates of the possible maximum sentences that could be imposed in each case if he instead were to proceed to trial and been found guilty and advised him that pursuant to the plea agreement he would not receive a sentence exceeding twenty-five years. Id. at 5-7. Yates indicated that he understood. Id. When asked if anyone had in any way forced, pressured, coerced or threatened him into entering the no contest pleas in his best interest, Yates unequivocally responded in the negative. Id. at 7. The state then proffered a factual basis for the pleas, and defense counsel stipulated that the state had established a factual basis for the pleas. Id. at 7-9. Before accepting the pleas, the trial court asked Yates if he had any questions for the court or counsel. Id. at 9-10. When he answered, "no," the court again asked if entering the no contest pleas was

what he wished to do, and Yates answered, "Yes, sir." Id. at 10.
The trial court then accepted his pleas of no contest and
admissions of guilt to the probation violation charges, finding
them freely, voluntarily, knowingly and intelligently made with
knowledge as to the consequences of the plea and supported by a
factual basis. Id. at 10. Sentencing was deferred for a few weeks.
Id. at 12.

During the start of the sentencing proceedings, trial counsel
was presented with an amended sentencing guidelines scoresheet,
which included the new charges and the violation of probation
charges. Id. at 15-5. Trial counsel noted one error discrepancy on
the violation of probation scoresheet, which was corrected. Id. at
14-5. Before the court proceeded to sentence Yates, trial counsel
stated as follows:

> Okay, uh, Your Honor he - he pled to, uh, all of these
> charges, there's six cases, uh, pending close court, two are
> violations of probation and four were new law violation[s].
> Uh, he entered a plea of best interest, it was a capped plea
> of 25 years Your Honor, uh, I've been - went over that with
> him so that means, uh, so he understands what that means. Uh,
> it was negotiated with the State and myself and him. Uh, I'll
> - I'd ask that the family speak and then I'll -

Id. at 16. Several witness then addressed the court on Yates'
behalf. Id. at 16-7. Defense counsel next requested the court to
sentence Yates to some sort of split sentence, while recognizing
that the sentencing guidelines scoresheet provided for a minimum
sentence of 54.3 months. Id. at 18-20. Yates personally addressed
the court, apologizing for his actions which resulted in the
subject offenses and stating that his unlawful behavior was due to
his addiction to drugs. Id. at 20. The state recommended that the
court sentence Yates to the maximum possible term of imprisonment
pursuant to the negotiated agreement, which was twenty-five years.
Id. at 21-2. After noting that certain of Yates' unlawful actions

in the subject cases could have resulted in multiple deaths and that Yates had a long prior criminal history,[4] the trial court adjudicated Yates guilty of the subject offenses and violation of probation charges, revoked Yates' terms of probation, and sentenced him to various terms of imprisonment, totaling twenty-five years. Id. at 26-30.

Approximately fourteen months later, Yates was re-sentenced, however, his total term of imprisonment remained twenty-five years. (DE# 14; Ex. 2). See also Initial Brief of Appellant at 4-5. (DE# 14; Ex. 9). Not long after the resentencing, Yates filed a pro se motion to withdraw plea, subsequently amended, challenging the voluntariness of his no contest pleas and pleas of admission on various grounds, including many of the same grounds of ineffective assistance of counsel raised here. (DE# 14; Ex. 3, 4). The state filed its reply, after which the trial court entered an order appointing counsel and an evidentiary hearing was subsequently conducted on the motion. (DE# 14; Ex. 5, 6, 7, 22). After listening to the testimony of witnesses and hearing argument from counsel at the hearing, the trial court entered an extensive and well-reasoned written order, denying the motion for postconviction relief which was construed as a motion pursuant to Fla.R.Crim.P. 3.850. (DE# 14; Ex. 8). Yates prosecuted an appeal from the ruling, and the Florida Fourth District Court of Appeal affirmed the trial court's denial of relief in a per curiam decision without written opinion. See

---

[4]In brief, the facts of certain offenses and violation of probation charges are as follow. On January 14, 2001, based upon outstanding warrants, two law enforcement officers were pursuing Yates in police vehicles and Yates was fleeing and eluding the officers. The pursuit ended when the police vehicles and Yates' vehicle were involved in a collision, with both officers and Yates' passenger sustaining injuries. Yates took off on foot and while running from the scene of the crash, he was in the possession of cocaine, smoking the cocaine from a cocaine pipe. When ultimately captured, he resisted arrest with violence. Yates has been convicted of at least four prior unrelated offenses, including burglary, grand theft, fraud, and escape. See http://www.dc.state.fl.us.

Yates v. State, 923 So. 2d 512 (Fla. 4 DCA 2006)(table).


Approximately six months later, Yates filed a second *pro se* Rule 3.850 motion for post-conviction relief, subsequently amended, challenging his pleas on several grounds of ineffective assistance of trial counsel, most of which had been raised in the earlier motion. (DE# 14; Ex. 13, 14). The motion and amended motion were dismissed by the trial court as untimely filed pursuant to Florida's two year limitations period, and Yates's subsequent motion for rehearing was also denied. (DE# 14; Ex. 15, 16, 17). The dismissal of the second Rule 3.850 motion as time-barred was per curiam affirmed in a decision without written opinion. See Yates v. State, 963 So. 2d 719 (Fla. 4 DCA 2007)(table). This federal pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 followed days after the conclusion of all state court proceedings.


The respondent correctly concedes that this petition has been timely filed. See 28 U.S.C. §2244(d)(1)-(2). The respondent further acknowledges that the claims of the instant petition have been exhausted before the state courts.[5] See 28 U.S.C. §2254(b),(c). The issues have been addressed on the merits by the respondent.[6]

---

[5]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

[6]The respondent also asserts that certain claims raised herein, such as the prosecutorial misconduct claim, are subject to a procedural bar in that the state courts have applied a procedural bar. See Response to Order to Show Cause at 19,

Pursuant to 28 U.S.C. §2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. §2254(d) governs the review of those claims. See Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11 Cir. 2003). Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d). See also Price v. Vincent, 538 U.S. 634, 638-39 (2003); Clark v. Crosby, 335 F.3d 1303, 1308 (11 Cir. 2003). "[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction

---

23-4. Since all claims raised herein are essentially inextricably intertwined and have been addressed on the merits in one form or another by the state courts in the initial Rule 3.850 proceeding, application of a procedural bar is not appropriate.

relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Further, a federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

Yates essentially claims in this federal proceeding that his pleas of no contest and admissions to the violation of probation charges are unlawful in that the pleas and admissions were involuntarily entered and that he received ineffective assistance of trial counsel for several specified reasons in connection with the entry of the pleas and resultant sentences. Yates is not entitled to relief in this habeas corpus proceeding in that his challenges to his convictions and sentences are meritless.[7] See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970). See also Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984). For

_____

[7]The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. Const. Amend. VI. In order to prevail in this habeas corpus proceeding on his claim of ineffective assistance of counsel, the petitioner must make a particularized showing of an identifiable lapse in counsel's performance which falls below constitutional standards, and the petitioner must establish that the error was prejudicial, that is, but for counsel's error, there is a reasonable probability that the ultimate result would have been different. Strickland v. Washington, 466 U.S. 668 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. In the context of a case in which guilty pleas are entered, application of the second prong of the two-pronged standard of Strickland requires a showing that there is a reasonable probability that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

the reasons stated immediately below, the trial court's determination that Yates was not entitled to postconviction relief on his claims, which decision was affirmed on appeal, see Yates v. State, 923 So. 2d 512 (Fla. 4 DCA 2006)(table), was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

As indicated, the trial court conducted an extensive evidentiary hearing in the initial Rule 3.850 proceeding where Yates challenged the subject pleas and admission on essentially the identical claims presented here. See Transcript of evidentiary hearing conducted on April 23 and May 30, 2003. (DE# 14; Ex. 22). Yates was represented by appointed counsel at the hearing and former trial counsel Mary Celidonio testified at length regarding her representation of Yates which involved the plea offers. Id. at 70-111. Yates also testified in his own behalf at the hearing. Id. at 8-70. After listening to the testimony and hearing argument from counsel, the trial court concluded that Yates had not "proven that his pleas of no contest and admissions of violation of probation on March 22, 2001, were coerced or involuntary or the result of being misled by his attorney." (Order Denying Motion for Post-Conviction Relief After Evidentiary Hearing at ¶13)(DE# 14; Ex. 8).

Specifically, with regard to the sentences he was to receive pursuant to the plea agreement, Yates claims here, as he did in the state postconviction proceeding, that his lawyer induced him to accept a plea offer with a cap of twenty-five years by presenting him with an incorrect scoresheet that did not accurately reflect the terms of the plea offer; that counsel misled him regarding the

sentence to receive pursuant to the plea agreement; and that counsel failed to compare the sentencing scoresheet presented to him at the time he entered into the written plea agreement with the amended scoresheet presented at the sentence proceeding, resulting in a discrepancy between the charges as perceived by him and the actual charges. In its order of denial, the trial court first summarized what had transpired before the plea agreement had been entered into as revealed by the testimony presented at the hearing as follows:

> 1.   On March 19, 2001, [Yates] was set for jury trial docket to dispose of four different cases charging multiple new crimes [footnote omitted], and he also had pending nonjury trials on two cases of violation of probation involving felony charges. [footnote omitted]. [Yates] wanted a "package deal" plea bargain to dispose of all pending trials.[8]
>
> 2.   [Yates] was concerned in negotiating a plea that he not be sentenced on any felony crimes of violence because he felt that the Department of Corrections would give him less gain time credit on any sentences for violent felonies. [Yates] had three violent felonies pending for trial: aggravated assault on a law enforcement officer, resisting an officer with violence, and aggravated fleeing from an officer. His trial attorney, Mary Celidonio, specifically tried to negotiate a plea agreement with the State which would avoid a sentence for a violent felony. Ms Celidonio was able to negotiate for a plea to a lesser charge of resisting an officer *without* violence, but the State refused to drop or lower the charges of aggravated assault on a law enforcement officer and aggravated fleeing from an officer. The State would also only agree to recommend no more than a total of twenty-five years of incarceration (referred to as a "capped plea of 25 years" written in black ink on the original plea form signed by Defendant).[See Plea Agreement, copy of original filed in Case No. 2000 CF 3047 attached hereto as Exhibit A][9]
>
> 3.   During the plea negotiations between [Yates] and the State, [Yates] was advised and was aware that the maximum sentence he could receive for all the cases pending before the Court at that time was eighty-three years of incarceration.

---

[8]<u>See</u> Transcript of evidentiary hearing at 73-4, 75-6.

[9]<u>See</u> Transcript of evidentiary hearing at 83-4, 109-11. <u>See also</u> Plea of No Contest/Admission at 2.

> [Yates] wanted his attorney to negotiate for no more than ten
> years of incarceration, followed by ten years of probation.
> Ms. Celidonio did try to negotiate for such a split sentence,
> but the State would not agree to anything less than the right
> to ask the court to impose no more than a total of twenty-five
> years incarceration for all the pending charges and violations
> of probation.[10]

(emphasis supplied)(Order Denying Motion for Post-Conviction Relief
After Evidentiary Hearing at ¶¶1-3).

In support of his claims, Yates testified at the hearing that
the plea agreement did not include the word "incarceration," and
that trial counsel assured him that he would receive a split
sentence, meaning a sentence of incarceration followed by a period
of probation, and that she would fill in the details of the split
sentence on the plea form after imposed by the court.
See Transcript of evidentiary hearing at 10-12. He further
testified that counsel misled him with regard to the charges
included in the plea agreement and sentences to be imposed pursuant
to the pleas, because the sentencing guidelines scoresheet she
showed him failed to include violent felonies for scoring purposes.
Id. at 12-5, 20-1. The trial court found that at the time Yates
executed the written plea agreement, the plea agreement contained
the wording "capped plea of 25 years," however, that language was
not followed by "incarceration," which word was subsequently added
by the prosecutor when he executed the plea form. Id. at ¶4. (Order
Denying Motion for Post-Conviction Relief After Evidentiary Hearing
at ¶4).

After listening to the testimony of former trial counsel and
Yates, the trial court expressly rejected as incredible Yates'
testimony that he did not understand all charges to which he was

---

[10]See Transcript of evidentiary hearing at 78-82, 85, 89, 105-06, 109.

entering his pleas of no contest and did not understand that when he entered the pleas of no contest and admissions of violation of probation that he was facing the possibility of receiving twenty-five years of incarceration as a result of his pleas and admissions. Id. at ¶8. The court further found as incredible Yates' assertion that trial counsel had told him that she would add the parameters of the split sentence to the plea form *after* the judge imposed the sentence. Id. In its order, the court stated, "[t]o the extent that [Yates'] testimony during the evidentiary hearing conflicts with Ms. Celidonio's version of the conversations and events on this issue, the Court does not find [Yates'] testimony credible." Id. at ¶8. Finding former trial counsel's testimony credible, the court summarized her testimony as follows:

> 7.    During the preliminary negotiations for a "package deal" in this case, Ms. Celidonio was not aware that [Yates] had new charges pending against him under Case No. 2001 CF 139, which is the case [Yates] was charged with aggravated assault on a law enforcement officer and aggravated fleeing from an officer. The court finds that when Ms. Celidonio became aware of the new charges, she adjusted her negotiations to encompass all the new charges, and for that reason, there were hand written interlineations on the scoresheet shown to [Yates] at the time he signed the plea form which included scoresheet points for the offenses filed under Case No. 2001 CF 139, even though those offenses were not specifically named on the amended draft of the scoresheet. [See copy of Defendant's Exhibit 1 attached hereto][11] The court further finds that the hand written interlineations on the amended draft of the scoresheet were shown to [Yates] before he signed the plea form.[12]

> 8.    ...Ms. Celidonio testified that she never assured [Yates] he would get a split sentence; that she specifically advised [Yates] that the State would not agree to drop or reduce the charges of aggravated assault on a law enforcement officer and aggravated fleeing from an officer; and that she specifically advised [Yates] the State would not agree to

---

[11] See Criminal Punishment Code Scoresheet. (Exhibit attached to Yates' Motion to Withdraw Plea).

[12] See Transcript of evidentiary hearing at 85-92, 92-4, 97-9, 99-101.

anything less than to ask for a maximum of twenty-five years of incarceration. She further advised [Yates] that she and [Yates] could ask for a sentence of less than twenty-five years of incarceration....[13]

Id. at ¶¶7, 8. To further support its finding that Yates' testimony at the hearing was incredible, the trial court referred to the executed plea form, which clearly indicated that he was entering no contest pleas to aggravated assault on a law enforcement officer and aggravated fleeing from an officer, and the sentencing guidelines scoresheet which showed a maximum sentence of eighty-three years. Id. at ¶8. The court acknowledged that although there were in fact two different scoresheets, with aggravated assault on a law enforcement officer listed on scoresheet used at sentencing, while dealing in stolen property was listed as the primary offense on the earlier provided scoresheet, such fact did not render trial counsel's testimony less credible but more credible than Yates' version of the events. See Order Denying Motion for Post-Conviction Relief After Evidentiary Hearing at 4 n.3. The court stated a comparison of the scoresheets reveals that the point calculations were nearly identical for the primary offense category, the point calculation for the total sentence points were identical, and the total maximum incarceration periods were identical.[14] Id.

The trial court also rejected Yates' assertion that trial counsel coerced him into accepting the plea agreement by presenting it on March 22, 2001, as a "now or never" proposition and by not allowing him additional time to decide whether to accept the offer. Id. at ¶¶9-11. The trial court stated in its order that the four new criminal cases were originally scheduled for jury trial on

---

[13]See Transcript of evidentiary hearing at 78, 100, 108-09.

[14]Compare initial Criminal Punishment Code Scoresheet (Exhibit attached to Yates' Motion to Withdraw Plea) with later Criminal Punishment Code Scoresheet (Attachment B to Petitioner's Reply; DE# 18).

March 19, 2001, however, due to scheduling priorities, the cases
were set for back-up trials to be conducted on March 22, 2001. Id.
at ¶9. With these dates in mind, the trial court found Yates'
assertion meritless, as follows:

> 9.    ... Ms. Celidonio did not recall what time parameter was
> given to [Yates] to make a decision whether to accept the
> State's plea offer, but she did not dispute that it could have
> been a matter of minutes.[15]
>
> 10.    [Yates] affirmatively testified during the evidentiary
> hearing that he did not want to face the possibility of going
> to trial on all the cases and face the possibility of a
> maximum period of incarceration of eighty-three years. [16] The
> Court finds from the evidence that the State was unwilling to
> accept any plea agreement that would allow the State to ask
> for less than a total of twenty-five years of incarceration
> for all the pending cases. The Court does not find from the
> evidence that the fact that [Yates] may have had only a few
> minutes to decide whether to accept the State's final offer on
> a plea agreement renders his decision to accept the plea
> involuntary.
>
> 11.    The Court does not find [Yates'] testimony credible that
> Ms. Celidonio misled or forced him to enter a plea by telling
> him he either had to accept the State's plea offer or he would
> be sentenced to eighty-three years of incarceration. [Yates]
> clearly knew he had the option to pursue a trial by jury in
> each case with new charges pending if he did not want to
> accept the State's plea agreement.

Id. at ¶¶9-11.

     Finally, the postconviction court also rejected Yates' claim
that his pleas had not been knowingly and voluntarily entered,
because he had been taking psychotropic prescription medication at
the time he entered his pleas and was sentenced and his related
claim that he received ineffective assistance of trial counsel in
that his lawyer did not require the trial court to determine during
the plea proceeding whether he was under the influence of drugs or

---

[15]See Transcript of evidentiary hearing at 105-07.

[16]See Transcript of evidentiary hearing at 41-2.

alcohol, stating as follows:

> The Court does find that several days before and on the day of entering his pleas of no contest and admissions of violation of probation, [Yates] was taking three times a day, 50 milligrams of vistaril, a psychotropic medication for anxiety, which has, as a possible side effect, the potential for causing drowsiness. [reference to attached exhibit omitted] [Yates] testified that because he was on medication that day, he was drowsy and confused, and for that reason, he did not understand what he was doing or what the consequences were when he entered his pleas of no contest and admissions of violation of probation. At the evidentiary hearing, Ms. Celidonio did not recall whether she knew [Yates] was taking medication at that time, but she clearly recalled that [Yates] had no problem understanding what she was saying to him that day, what the negotiations with the State were, and that [Yates] gave he[r] no impression that he was under the influence of medication or was drowsy. [17] From a review of the transcript of the plea colloquy by the Court, the Court does not find any indication that [Yates] was drowsy or had any problems understanding what the Court was saying to him. From [Yates'] own testimony during the evidentiary hearing concerning the details of his version of the discussions between [Yates] and Ms. Celidonio, his assertion that he was drowsy and confused is refuted. Therefore, the Court does not find from the evidence that [Yates] was under the influence of medication to the extent that it rendered him incapable of understanding what he was doing and the consequences of entering his pleas of no contest and admissions to the violations of probation on March 22, 2001.

(Order Denying Motion for Post-Conviction Relief After Evidentiary Hearing at ¶12).

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea.[18] Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a

---

[17]See Transcript of evidentiary hearing at 22-3, 40-4, 82-3.

[18]The general principles of law with regard to guilty pleas are equally applicable for pleas of nolo contendere. North Carolina v. Alford, 400 U.S. 25, 37 (1970).

voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. <u>Mabry</u>, 467 U.S. at 509, <u>quoting</u>, <u>Brady v. United States</u>, 397 U.S. at 748. In other words, if a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may therefore challenge the guilty plea under the Due Process Clause. <u>Mabry v. Johnson</u>, 467 U.S. at 509. <u>See also</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971). In construing a plea agreement, the court must decide whether the defendant reasonably understood the terms of the plea agreement when he pleaded guilty. <u>Id</u>. <u>See also</u> <u>United States v. Hernandez</u>, 322 F.3d 592, 599 (9 Cir. 2003).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact made during the postconviction proceeding, which findings were approved by the state appellate court, are not supported by the record or were otherwise deficient and the findings must therefore be presumed correct.[19] 28 U.S.C. §2254(e). Thus, when presuming the findings of

---

[19]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5 Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). Thus, even where the state courts make no express findings, federal courts reviewing petitions for habeas corpus are entitled to "reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia." <u>Fike v. James</u>, 833 F.2d 1503, 1505-06 (11 Cir. 1987), <u>quoting</u>, <u>Townsend v. Sain</u>, 372 U.S. 293, 314 (1963), overruled in part on other grounds, <u>Kenney v. Tamayo-</u>

fact as correct, as this Court must, it is apparent from review of the record as a whole that Yates' no contest pleas and admissions were entered freely, voluntarily and knowingly with the advice received from competent counsel and not without understanding of the nature of the charges and direct consequences of the pleas, as claimed by Yates.[20] It is further noted that Yates unequivocally stated during the change of plea proceeding that he was pleading no contest and admitting his guilt to the probation violation charges because that was what he wanted to do in that it was in his best interest to do so and that he had not been forced or pressured into doing so. He also stated that he was aware that by entering into the plea agreement the trial court could sentence him to a term of imprisonment of twenty-five years. Such statements made in connection with the entry of the subject pleas carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Kelley v. Alabama, 636 F.2d 1082, 1084 (5 Cir. Unit B. 1981). Yates' subsequent assertions to the contrary were properly rejected by the state courts.

---

Reyes, 504 U.S. 1 (1992). Accordingly, if it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." Marshall v. Lonberger, 459 U.S. 422, 433 (1983), citing, LaVallee v. Delle Rose, 410 U.S. 690 (1973). In this case, the trial court expressly found former trial counsel's testimony credible and expressly rejected Yates' testimony as incredible with the exception of whether Yates had been taking a psychotropic medication during the subject time period.

[20]While the question of whether constitutional rights have been effectively waived is governed by federal standards, Boykin v. Alabama, 395 U.S. at 238 (1969), factual findings underlying such a conclusion are entitled to the statutory presumption of correctness on habeas corpus review if they are fairly supported by the record. See Marshall v. Lonberger, 459 U.S. 422, 431 (1983) (applying former §2254(d) in the context of determining the voluntariness of a guilty plea). An issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question. Miller v. Fenton, 474 U.S. 104, 113 (1985).

Further, Yates' assertion that he would not have entered the no contest pleas and admissions but would have instead gone to trial on the several new criminal charges and probation violation charges is clearly not credible. The record in this case indicates that there was a sufficient factual basis for the pleas, as found by the trial court during the plea proceeding. Also, defense counsel properly stipulated that there existed a factual basis for the subject pleas. Id. By entering the pleas, Yates received a total sentence much lower than what he would probably have received if he had proceeded to trial and been found guilty of the subject charges (i.e., a possible eighty-three year term of imprisonment). While counsel attempted to persuade the court that Yates should not be sentenced to a twenty-five-year term of incarceration but should receive a much-lower split sentence, the trial court disagreed with counsel based upon the severity of the offenses involved in the case and Yates long criminal history, which included repeated violations of the terms of his probation. It is highly unlikely that the trial court would have imposed a total term of imprisonment of twenty-five years without the negotiated plea agreement, much less anything lower.[21]  Yates clearly received a benefit from entering into the negotiated plea agreement.

---

[21]During the sentence proceeding, immediately before imposing sentence, the trial court repeated the serious nature of the subject offenses and Yates' repeated violations of the law and then personally addressed Yates with the following harsh remarks:

> You have a frightening prior record, you're apparently just a career habitual criminal, I guess [you] can't or won't obey the law and at least for the time you're not incarcerated I guess you always will be, I don't know. It's just unfortunate that you chose to live like this and waste your life, you've been given chances, you just don't take advantage of it. And now not only you but also your family unfortunately has to bear the burden of your choices and your crimes, and you should feel guilty about that, not me. I hope all this was worth it to you. Sooner or later enough is enough Mr. Yates and we have either reached or passed that point in your case where enough is enough, the party's over, it's time to start paying.

(Transcript of change of plea and sentencing hearings at 26).

Even if this Court were to accept as true Yates' allegation that before he had entered the pleas, defense counsel had somehow conveyed to him that he would receive a split sentence, it cannot be said that defense counsel promised or guaranteed such a sentence.[22] In fact, as recited above, the record clearly indicates otherwise. Also the record demonstrates that Yates understood that the sentence was to be later determined by the court, and that he could be sentenced up to a term of twenty-five years. Thus, the entry of the pleas was clearly in the best interest of the petitioner, and counsel was diligent in all aspects of his representation. See Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).

Yates is also not entitled to habeas corpus relief on his claim that he received ineffective assistance of trial counsel, because his lawyer failed to take pretrial depositions. The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in the proceedings. United States v. Broce, 488 U.S. 563 (1989). See also Barrientos v. United States, 668 F.2d 838, 842 (5 Cir. 1982). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Exceptions to the general rule are those cases which are constitutionally infirm

---

[22]It is noted that a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary. See United States v. Stumpf, 827 F.2d 1027, 1030 (5 Cir. 1987).

because the government has no power to prosecute them at all, which is not applicable to this case. See Broce, 488 U.S. at 574-575. The same principle holds true for voluntary pleas of *nolo contendere*.[23] See Williams v. Wainwright, 604 F.2d 404, 406-07 (5 Cir. 1979)(holding that defendant's voluntary plea of nolo contendere waived all non-jurisdictional defects). See also Hudson v. United States, 272 U.S. 451, 455 (1926)(stating that a plea of nolo contendere is, like a plea of guilty, an admission of guilt for purposes of the case); Carter v. Collins, 918 F.2d 1198, 1200 n. 1 (5 Cir. 1990)(stating that because a plea of nolo contendere is treated as an admission of guilt, the law applicable to a guilty plea is also applicable to a plea of nolo contendere).

Thus, a voluntary no contest plea constitutes a waiver of all non-jurisdictional defects in the proceeding up to that point. The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. See Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5 Cir. 1981), cert. denied, 456 U.S. 992 (1982). See also United States v. Bohn, 956 F.2d 208, 209 (9 Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Petitioner's pre-plea claim does not relate to the voluntariness of the pleas and, even if this claim could be so construed, for the reasons indicated above, the subject pleas were knowingly and voluntarily entered, as revealed by the record. Accordingly, petitioner is not entitled to habeas review of this claim. See United States v. Arnaiz, 144 Fed.Appx. 27, 31 (11 Cir. 2005)(holding that defendant waived any non-jurisdictional challenges to his indictment, including by way of a motion to

---

[23]As indicated herein, the general principles of law with regard to guilty pleas are equally applicable for pleas of *nolo contendere*. North Carolina v. Alford, 400 U.S. 25, 37 (1970).

dismiss the indictment, when he voluntarily pleaded guilty with the advice of competent counsel).

Even if Yates' pre-plea ineffective claim was reviewable, Yates would not be entitled to relief in that his claim is meritless. See Strickland v. Washington, 466 U.S. 668 (1984). See also Hill v. Lockhart, 474 U.S. 52 (1985). It is first noted that by executing the written plea form, Yates stated:

> I have discussed this case and everything in this document with my attorney, and I am satisfied with the representation I have received from my attorney. I have told my attorney all the facts and circumstances known to me about the charges. My attorney counseled and advised me on the nature of each charge, on any and all lesser included charges, and on all possible defenses that I may have in this case.

(Plea of No Contest/Admission at ¶19). Moreover, by knowingly and intelligently electing not to proceed to trial, and instead enter the subject pleas, Yates foreclosed counsel from pursuing any such discovery.[24] Trial counsel's performance, therefore, cannot be deemed deficient for failing to do so. See Strickland v. Washington, 466 U.S. at 691 (stating that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions). See also Foster v. Strickland, 707 F.2d 1339, 1343-44 (11 Cir. 1983)(stating that

---

[24]In response to Yates' complaint to The Florida Bar, trial counsel stated in pertinent part as follows:

> As far as taking depositions on any of your cases, I did not complete discovery in your cases, because you wanted a package deal for all cases. I do not go ahead and set depositions for cases resolving in changes of plea. The fact that you had originally two case[s] and then two more appear after the new year and the VOP's surfacing, the fact that you only were incarcerated 87 days, tells me my client wanted to push his case through and get sentenced. I don't normally plea someone in a couple of months without their request.

(Letter from Assistant Public Defender Mary Celidonio to Yates dated December 27, 2001, at 2). (Attachment C to Petitioner's Reply; DE# 18).

"Petitioner, who preempted his attorney's strategy choice, cannot now claim as erroneous the very defense he demanded [his attorney] present."), <u>cert</u>. <u>denied</u>, 466 U.S. 993 (1984).

If Yates is also alleging that his due process rights were in someway violated by the trial court's denial of his motion to withdraw plea, such a claim is not cognizable in this federal habeas corpus proceeding. It has long been recognized that there is no federal constitutional requirement that beyond a direct appeal the states must provide a means of post-conviction review of state criminal convictions. <u>See</u> <u>McKane v. Durston</u>, 153 U.S. 684 (1894); <u>Griffin v. Illinois</u>, 351 U.S. 12 (1956). Because a state has no constitutional duty to provide a means of post-conviction review of state convictions, alleged errors or defects in state post-conviction proceedings do not render a prisoner's detention unlawful or raise a constitutional question cognizable in federal habeas corpus proceedings. <u>See</u> <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5 Cir. 1995), <u>cert</u>. <u>denied</u>, 518 U.S. 1022 (1996). <u>See also</u> <u>Conner v. Director of Div. of Adult Corrections</u>, 870 F.2d 1384, 1386-87 (8 Cir.), <u>cert</u>. <u>denied</u>, 493 U.S. 953 (1989), <u>citing</u>, <u>Williams v. Missouri</u>, 870 F.2d 140, 143 (8 Cir.), <u>cert</u>. <u>denied</u>, 451 U.S. 990 (1981); <u>Kirby v. Dutton</u>, 794 F.2d 245, 247-48 (6 Cir. 1986); <u>Bryant v. State of Maryland</u>, 848 F.2d 492, 493 (4 Cir. 1988). The adequacy or unavailability of state post-conviction review is therefore only material in federal habeas corpus proceedings in the context of exhaustion of state remedies as to federally protected rights. <u>See</u> <u>Conner</u>, 870 F.2d at 1386; <u>Williams</u>, 640 F.2d at 143. <u>But see</u> <u>Dickerson v. Walsh</u>, 750 F.2d 150, 152-53 (1 Cir. 1984).

In Florida, in a postconviction proceeding, all that due process requires is that the defendant be provided meaningful

access to the judicial process. <u>See</u> <u>State ex rel. Butterworth v.</u> <u>Kenny</u>, 714 So.2d 404, 408 (Fla. 1998)(stating that "[a]ll that is required in postconviction relief proceedings, whether capital or non-capital, is that the defendant have meaningful access to the judicial process."). Here, it is clear from review of the record, which includes the transcript of the evidentiary hearing conducted on the motion to withdraw plea, construed as a Rule 3.850 motion, where Yates was represented by counsel at the evidentiary hearing and in his appeal from the trial court's denial of his motion, that Yates was provided meaningful access to the judicial process. The trial court denied Yates postconviction relief, finding his claims meritless, and the trial court's denial of postconviction relief was affirmed on appeal. Yates clearly was not denied due process during his postconviction proceeding and was unquestionably not denied meaningful access to the courts.

Finally, Yates claims that his convictions and sentences are the result of prosecutorial misconduct in that the state unlawfully altered the terms of the plea agreement after it had been negotiated. Specifically, Yates alleges that after he and trial counsel executed the plea agreement, the prosecutor improperly included the word "incarceration" after the wording "capped plea of 25 years." For the reasons expressed above, the trial court properly found that although the word "incarceration" was subsequently added by the prosecutor when he executed the plea form, such addition in no way rendered the subject pleas unlawfully entered. The record supports the state court findings that Yates understood all charges to which he was entering his pleas of no contest and admissions and that he was facing the possibility of receiving twenty-five years of incarceration as a result of his pleas and admissions. (Order Denying Motion for Post-Conviction Relief After Evidentiary Hearing at ¶4). Even if the prosecutor's

actions were in someway improper, such actions did not render the subject pleas, convictions and sentences unlawful.

It is therefore recommended that the petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this $\underline{2^{nd}}$ day of July, 2008.

_____

UNITED STATES MAGISTRATE JUDGE


cc:  Travis Yates, Pro Se
     DC# 793102
     Marion Correctional Institution
     P. O. Box 158
     Lowell, FL 32663-0158

     Daniel P. Hyndman, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428